In re PARAGON PAPER COMPANY, INC., Debtor.

MACKIN CONSTRUCTION COMPANY, d/b/a Mackin Fuel and Trucking Company, Plaintiff,

v.

WESTFIELD SAVINGS BANK, United States Small Business Administration, Louis V. Jackvony, Jr., Defendants.

Bankruptcy No. 8100971.
Adv. No. 820413.

United States Bankruptcy Court, D. Rhode Island.

May 25, 1983.

Diane Finkle, Winograd, Shine & Zacks, P.C., Providence, R.I., for plaintiff.

William A. Murray, III, Scharoff, Smith & Murray, P.C., Westfield, Mass., for defendant Westfield Sav. Bank.

Harvey L. Backmender, Holyoke, Mass., for defendant U.S. Small Business Admin.

Herbert DeSimone, DeSimone & Del Sesto, Providence, R.I.; for defendant Louis V. Jackvony, Jr.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Plaintiff Mackin Construction Co. has filed a two-count complaint to recover $6379.79 for 8000 gallons of fuel oil delivered to the debtor in possession, Paragon Paper Co., on February 1, 1982.[1] Mackin brings this complaint against two secured creditors of the debtor in possession, Westfield Savings Bank (Bank) and the United States Small Business Administration (SBA), alleging that secured assets of the debtor corporation were preserved to their direct benefit. In Count II of the complaint, Mackin alleges that defendant Louis V. Jackvony, Jr., a principal stockholder in the debtor corporation, personally guaranteed payment for the oil delivery in question, and that he is therefore liable on the debt.

---

1. Paragon Paper Co., Inc., had already filed a Chapter 11 petition on December 7, 1981, but Mackin was unaware of the filing when it made the delivery in question.

## COUNT I

In the first count of its complaint, Mackin alleges that defendants SBA and the Bank were benefited by the delivery of the fuel oil to the debtor corporation, and that pursuant to 11 U.S.C. § 105 and § 506(c),[2] Mackin should recover from these defendants the amount of $6379.79 [3] for preserving the property of the debtor.[4]

It is clear from a literal reading of § 506(c), from the legislative history,[5] and from case law that the secured creditor must have benefited "from the activities for which the costs are incurred." *Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.),* 516 F.2d 154 (1st Cir. 1975); *Accord, First National Bank v. Taylor (In re Modern Mix, Inc.),* 18 B.R. 746, 749 (Bkrtcy.S.D.Ala.1982). The factual issue in this case, therefore, is whether either the Bank or SBA benefited from Mackin's delivery of approximately 8000 gallons of fuel oil to Paragon Paper on February 1, 1982.

Mackin asserts that the oil it delivered provided heat for the plant and thereby prevented damage which would have resulted from the freezing of vats, pipes, and other machinery in the plant. Because the dispositive issue in Count I is whether the Bank and/or SBA benefited from the delivery of fuel oil on February 1, 1982, we do not address other issues raised by the parties.

It is agreed that the first fuel oil delivery to Paragon by Mackin was made on January 29, 1982,[6] and that Martin Olson, an officer of Paragon, placed that order. We also find that the second and last delivery by Mackin was three days later, on February 1. Mackin concedes that neither the Bank nor SBA ordered this oil, and that neither of these defendants was ever billed for the second delivery.

■ Based upon the entire record, we conclude that neither SBA nor the Bank received any benefit from the delivery of the fuel in question, for the following reasons: [7]

1. According to the evidence, Paragon Paper Co. consumed 8,000 gallons of fuel oil

2. This decision, which cites to provisions of the Bankruptcy Reform Act of 1978, is entered in accordance with the rule adopted by the United States District Court for the District of Rhode Island pursuant to an order of the Circuit Council for the First Circuit, effective December 25, 1982. We follow the lead of the Circuit Council in declining to "pre-commit ourselves on any legal or constitutional questions which may arise concerning this rule." Order of the Circuit Council for the First Circuit (December 22, 1982).

3. Mackin seeks to recover $6285.51, the amount billed to Paragon Paper Co. for the oil in question, plus $94.28 in interest. (Plaintiff's Exhibit 3.)

4. 11 U.S.C. § 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

5. The legislative history indicates that § 506(c) enables the trustee or debtor in possession to recover expenses in appropriate circumstances:

Section 506(c) of the House amendment was contained in H.R. 8200 as passed by the House and adopted, verbatim, in the Senate amendment. Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party. 124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978).

Nothing in the legislative history, and no cases cited by the Plaintiff, indicate that such an action may be brought by an unsecured creditor. It may be that 11 U.S.C. § 105 enables the court to construe § 506(c) more broadly, however, and for the purpose of this decision only, but without deciding the question, we treat Mackin as an appropriate plaintiff under § 506(c).

6. Although two witnesses testified that the first oil delivery occurred on January 27, 1982, the parties agree in the Joint Pre-Trial Order that this delivery took place on January 29. Accordingly, we accept the January 29 date in this decision.

7. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

per day, when operating at full capacity. The oil which Paragon ordered from Mackin was apparently used to produce a test run for a prospective purchaser of the company. Even assuming that the plant was operating at only a small part of its capacity, and consumed only 1000 gallons of oil per day, the oil delivered on February 1 would have been exhausted within a week, at most. Based on the evidence, I find that the plant closed on February 8, 1982, that no oil was delivered after that date, and that the boilers were not operated after that time. Accordingly, there is no basis upon which to conclude that the oil supplied by Mackin on February 1, 1982 either heated the plant or prevented freezing of any of its components after February 8, 1982.

2. Paul Scheer, the auctioneer who conducted the sale of the debtor's personal property for SBA, testified that in his experience it is common to conduct sales of unheated plants in winter. Furthermore, also based on his experience in liquidating similar facilities, the greatest damage to machinery in a paper mill is caused by solidifying of pulp remaining in vats and mixing machines. Such problems are prevented not by heating the plant, but by periodically agitating the pulp or removing it altogether. Scheer testified that the plant was not operating and appeared to be virtually deserted when he made his inspection in January 1982. At no time did Scheer suggest to SBA that the plant be heated. Mr. Scheer's testimony remains unimpeached.

3. Some minor damage occurred in January or February 1982, due to frozen water pipes.

For the foregoing reasons the Court concludes that the fuel oil supplied by Mackin did not preserve the assets of Paragon Paper or otherwise benefit either SBA or the Bank. Accordingly, it is ordered that the defendants in Count I have no liability for payment of the fuel oil in question.

## COUNT II

Plaintiff Mackin alleges that defendant Louis V. Jackvony, Jr. personally guaranteed payment of the fuel oil delivered by Mackin on February 1, 1982, that Mackin relied upon this guaranty, and that Jackvony is personally liable for the retail value of the fuel oil. Based upon the testimony and demeanor of the witnesses, the Court makes the following findings and conclusions:

1. Martin Olson, an officer of the debtor corporation, called Mackin on January 25, 1982, and ordered a truckload of fuel oil for delivery on January 27. Because Mackin had not previously done business with Paragon Paper, Mackin required payment at the time of delivery.

2. The fuel oil was delivered on January 29, but Mackin was not paid at that time, as promised. At Olson's suggestion, John Mackin, Jr., vice president in charge of operations of Mackin Construction Co., telephoned Jackvony, a principal stockholder in Paragon Paper, on Saturday, January 30. After checking into the matter, Jackvony assured Mackin by telephone that payment for the January 29 oil delivery had been wired to Mackin's bank, and in fact it had been.

3. Olson had ordered a second oil shipment from Mackin, and this delivery was made on February 1. Jackvony did not discuss this order with John Mackin, Jr. during their January 30 telephone conversation, nor did Jackvony at any time give his personal guaranty for payment of any oil delivered by Mackin to Paragon.

4. Mackin did not bill Jackvony personally for fuel oil at any time.

5. On June 11, 1982 John Mackin, Jr. wrote a detailed letter to Jackvony in which he asserted that Jackvony had given his "personal guarantee" that funds for the February 1 delivery would be transferred to Mackin's bank account. This letter was the first indication to Jackvony that Mackin was alleging a personal guaranty with respect to the second fuel oil delivery. I find that the assertions contained in the June 11, 1982 letter are self-serving and inaccurate, and do not reflect the evidence or constitute the facts as found by this Court.

6. It is possible that Mackin was misled by Martin Olson, who is not a party to this proceeding. John Mackin's frequent calls to (and from) Olson may explain some of his confusion—or at least inaccurate recollection—as to the content of his discussions with Jackvony. Mackin does not allege that Olson was Jackvony's agent, however, and any statements by Olson may not bear on the outcome of the issue before this Court.

Because the Court finds that Louis V. Jackvony, Jr. at no time gave his personal guaranty to Mackin for payment of fuel oil delivered to the debtor corporation, the complaint is denied as to Count II, also.

Because the Plaintiff's complaint is denied, the cross-claim of Westfield Savings Bank against Louis V. Jackvony, Jr. is dismissed.

The parties have consented to the entry of judgment by the Bankruptcy Judge pursuant to Local Rule 53, § (D)(3)(b).

Enter judgment accordingly.